UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DOYLE MIMS,

                    Plaintiff,                    Case No. 1:22-cv-128

v.                                                Hon. Hala Y. Jarbou

PEGGY ERICKSON, et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*.

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will dismiss without prejudice Defendants Ionia Correctional Facility (ICF), Simon, Bledsoe, Davis, Scott, Floyd, Tucker, Shouse, Morgan, Hinds, Way, Migrant, Sperry, Yuara, Thacker, Elliot, and Barber.

Further, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Marquette Branch Prison (MBP), Erickson, and Moyle. Additionally, the Court will deny Plaintiff's motion for the appointment of counsel (ECF No. 7) and motion for a preliminary injunction (ECF No. 8).

**Discussion**

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at ICF in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility and the MBP in Marquette, Marquette County, Michigan. Plaintiff sues MBP and the following MBP officials: Resident Unit Manager (RUM) Peggy Erickson and Prison Counselor Unknown Moyle, "name changed to Oliver." (Compl., ECF No. 1, PageID.1–2.) Plaintiff also sues ICF and the following ICF officials: Prison Counselor Unknown Simon; Sergeants Unknown Bledsoe and Unknown Morgan; RUM Unknown Davis; Correctional Officers Unknown Scott, Unknown Floyd, Unknown Tucker, Unknown Shouse, Unknown Hinds, Unknown Way, Unknown Migrant, Unknown Sperry, Unknown Yuara, Unknown Thacker, and Unknown Elliot; and Assistant Deputy Warden (ADW) Unknown Barber. (*Id.*, PageID.1–4.)

In Plaintiff's complaint, he states that on August 31, 2021, he was transferred to ICF from MBP. (*Id.*, PageID.4.) Plaintiff contends that "[b]efore transferring [he] was in a[] conflict with R.U.M. Erickson and P.C. Moyle/Oliver over grievances [he] filed" while at MBP. (*Id.*) At some point before his transfer, Plaintiff "was told directly by Moyle and Erickson that they would purposefully screw up his [Security Classification Committee] [(]SCC[)] report so that [he] would have a[] hard time at ICF." (*Id.*) Plaintiff alleges that RUM Erickson and Prison Counselor Moyle "prepared [his] SCC report an[d] weekly/monthly report that gives the reason for [administrative segregation] and m[a]liciously put in [Plaintiff's] report that [he] was involved in a[] fight in which

2

weapons [were] used," and "[a]dded . . . 'a[] C/O received puncture wounds and had to rec[ei]ve medical attention after breaking up the fight.'" (*Id.*) Plaintiff states that he "was not the inmate that stabbed the C/O nor[] did he ever rec[ei]ve a[] misconduct for this[;] the inmate who[] did was found guilty." (*Id.*) Plaintiff contends that "[it] shouldn't have been put in [his] SCC report opening speculation that [he] was the ass[au]lter of staff[;] this opened doors for retaliation at ICF." (*Id.*)

Plaintiff's complaint then describes a series of discrete events that occurred during his incarceration at ICF. Plaintiff alleges that upon arrival at ICF, Prison Counselor Simon placed a "hold in [his] file/SCC report," and Plaintiff was told this was due to the stabbing of the correctional officer at MBP. (*Id.*, PageID.5.) Plaintiff "explained that this was put into his file m[a]liciously and it should be removed because he didn't assault [a] C/O and this being in his file could set [Plaintiff] up to be retaliated against by ICF staff/C/Os." (*Id.*) Plaintiff contends that Prison Counselor Simon "refused to remove this from [Plaintiff's] SCC report for weeks," and "[e]ventually this was removed after [Plaintiff] conferred with R.U.M. Davis[;] [h]owever[,] the damage and reputation was built[] and staff began retaliating against [him]." (*Id.*)

Plaintiff states that he was released from administrative segregation "around Oct. 2021 or November 2021," but he had "loss of privileges" until December 2022. (*Id.*) Plaintiff states that he "began inquiring about rec[ei]ving his yard/recreation to C/O Floyd and C/O Scott and C/O Tucker." (*Id.*) Correctional Officers Floyd and Scott "conferred with Sgt. Bledsoe," and Sergeant Bledsoe told Plaintiff that Correctional Officers Floyd, Scott, and Tucker "fe[lt] like [Plaintiff] shouldn't even be given yard . . . after [he] ass[au]lted a[] C/O at Marquette." (*Id.*) Plaintiff threatened to write a grievance, and Sergeant Bledsoe and Correctional Officers Floyd and Scott "laugh[ed] at [Plaintiff]" and told him they would "throw [him] in Ad-Seg" if he wrote a grievance. (*Id.*) Plaintiff states that thereafter he did not write a grievance. (*Id.*)

Plaintiff contends that Correctional Officer Tucker "began sexually harassing [Plaintiff]" during "physical searches" in December 2021 and continuing into January 2022. (*Id.*, PageID.6, 8.) Plaintiff asked Correctional Officer Tucker "to stop numerous . . . times," and "[she] and other staff such as Scott would threaten" to send Plaintiff to administrative segregation "[i]f he didn't shut up." (*Id.*, PageID.6.)

Subsequently, after three months without yard time, Plaintiff "was allowed to go to yard/recreation," and "during this sanction break," Correctional Officer Tucker "performed a[] usual pat down and grabbed [his] testicles." (*Id.*) Plaintiff "threatened to write a[] PREA on [Correctional Officer Tucker]," and in response, she stated, "If you write a PREA grievance[,] I'll have an inmate beat your ass and we'll drag you to the hole." (*Id.*) Plaintiff contends that "every grievance [he] ever submitted or attempted to submit was thrown out except 2 or 3." (*Id.*)

Plaintiff contends that "[a]round January between 1st and 10th," an inmate "attempted to assault" him in the shower. (*Id.*) The inmate later "admitted that C/O Tucker had threatened him[,] [and] he apologi[z]ed to [Plaintiff]." (*Id.*)

Further, Plaintiff contends that he was "the subject of excessive cell and body search[es] sometimes being searched 3 to 4 times a week as many as 2 or 3 times a day." (*Id.*, PageID.7.) Plaintiff states that he "is known to make jail house liquor and this could play a factor[,] but jail house spud takes 6 to 7 days on cycle, so the amount of searches is still excessive." (*Id.*)

Plaintiff states that "[f]rom 1-16-22 [until] 1-20-22, C/O Scott, C/O Floyd, C/O Shouse, and C/O Tucker all entered [his] cell[,] destroying property." (*Id.*, PageID.8.) On January 19, 2022, Plaintiff's cell was searched, and he contends the search took "an unusual amount of time." (*Id.*, PageID.8–9.) When Plaintiff returned to his cell after the search, his "BBQ sauce [that was] brand new was now open, and the sauce was missing," and "his apples [were] missing." (*Id.*, PageID.9.)

The following day, Sergeant Bledsoe came to Plaintiff's cell and yelled, "Get that spud out [of] your cell before we search it[,] and I got a ticket to review." (*Id.*) "[A]t this point[,] [Plaintiff] had[] had enough of being retaliated against, ass[au]lted, harassed, and bullied for a[] staff assault he didn't commit," and he "walked up the hall complaining about the harassment and cursing at Sgt. Bledsoe." (*Id.*) Plaintiff contends that Sergeant Bledsoe "began calling [Plaintiff] 'bitch[es] and hoes' and threatening [Plaintiff]." (*Id.*) Sergeant Bledsoe then ordered Plaintiff to "go into the day room and do [the] ticket review," and when Plaintiff "began to walk in the day room," Sergeant Bledsoe "pushed the door into [Plaintiff's] back causing injury and possibl[y] a[] pinched nerve." (*Id.*, PageID.10.) Plaintiff states that when this occurred, he "panicked and feared for his life[, and] he turned around and pushed back open the door and stepped into the hall." (*Id.*) Sergeant Bledsoe "began yelling, 'I got you now lil bitch,'" and "he pulled the taser out and aimed it at [Plaintiff]." (*Id.*) Correctional Officers Scott and Floyd and Sergeant Kerr responded to the incident and ordered Plaintiff "to turn around and be hand cuffed." (*Id.*) Plaintiff "complied to these orders while yelling at Sgt. Bledsoe." (*Id.*) Plaintiff states that he was then taken to administrative segregation and "placed in a caged shower where he was forced to be in the shower for 2 ½ hours," and despite Plaintiff's requests to be taken to a cell so he could use the restroom, Correctional Officers Sperry, Yuara, and Elliot told him that "because he had staff ass[au]lts that for all they cared he could 'shit and piss on himself.'" (*Id.*) Thereafter, Sergeant Morgan reviewed Plaintiff's misconduct tickets and asked if "Floyd and Sgt. Bledsoe really use[d] his BBQ sauce and water to look like spud." (*Id.*) Plaintiff replied that they had. (*Id.*)

In Plaintiff's cell in administrative segregation, "his faucet water" was "discolored" and came out "brownish orange with a[] rusty metallic taste." (*Id.*) Plaintiff drank the water and "within days [he] had to stop because he began experiencing kidney pains and abdominal pains, [and]

diar[r]hea." (*Id.*, PageID.11.) Plaintiff asked for grievances and healthcare forms, and Correctional Officers Elliot, Sperry, Yuara, Way, Thacker, Migrant, and Hinds "began threatening if [Plaintiff] wr[o]te a[] grievance they would starve him to death." (*Id.*) Plaintiff "still attempted to put in grievances," and on January 24, 2022, the above-listed correctional officers "started taking [Plaintiff's] food trays and shower for approximately 10 days." (*Id.*) Plaintiff states that the correctional officers would either write that Plaintiff had refused the meal or Correctional Officer Migrant "would spit chewing tobacco into [Plaintiff's] food." (*Id.*)

Plaintiff states that "for weeks [he] was and still is being denied the grievance system." (*Id.*) Plaintiff contends that RUM Luther told Plaintiff that "there isn't anybody processing grievances." (*Id.*) Plaintiff also states that ADW Barber "was the A.D.W. at [Plaintiff's] initial SCC meeting and signed off even though he knew Simon was wrong even if it[']s his position to make sure all information is acc[u]rate." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that his First, Fourth, Eighth, and Fourteenth Amendment rights were violated. (*Id.*, PageID.12.) As relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (*Id.*, PageID.13.)

## II.   Plaintiff's Motions

### A.   Motion for the Appointment of Counsel

Plaintiff has filed a motion for the appointment of counsel. (ECF No. 7.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's motion for the appointment of counsel (ECF No. 7) therefore will be denied.

### B.    Motion for a Preliminary Injunction

Plaintiff has also filed a motion for a preliminary injunction. (ECF No. 8.) In his motion, Plaintiff "ask[s] the Court for a preliminary injunction that will allow [him] access to [the] law library 3 times a week as policy states and . . . [to] be moved out [of] the unit where the[] Defendants work daily." (*Id.*, PageID.1.)

The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits. *S. Glazer's Distribs. of Ohio L.L.C. v. Great Lake Brewing Co.*, 860 F.3d 844, 848 (6th Cir. 2017) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1982)). As set forth herein, the Court concludes that the complaint is properly dismissed. Therefore, the Court will deny Plaintiff's request for a preliminary injunction (ECF No. 8) as moot. *See Daunt v. Benson*, 956 F.3d 396, 421–22 (6th Cir. 2020) ("[A] court must not issue a preliminary injunction where the movant presents no likelihood of merits success.").

### III.    Misjoinder

In Plaintiff's complaint, he joins 20 Defendants, connecting a series of discrete claims. At this juncture, the Court reviews whether Plaintiff's claims are misjoined.

## A.      Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related

to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to

10

reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

    The Court will look to the first and earliest clear factual allegations against Defendants to determine which portion of the action should be considered related.[1] In Plaintiff's complaint, he first alleges that while he was incarcerated at MBP, "[he] was in a[] conflict with R.U.M. Erickson and P.C. Moyle/Oliver over grievances [he] filed." (ECF No. 1, PageID.4.) Plaintiff also alleges that Defendants Erickson and Moyle told him "they would purposefully screw up his SCC report so that [he] would have a[] hard time at ICF," which is where he was subsequently transferred. (*Id.*) Plaintiff alleges that these Defendants prepared his SCC report and "m[a]liciously put in [Plaintiff's] report that [he] was involved in a[] fight in which weapons [were] used" and added that a correctional officer "received puncture wounds and had to rec[ei]ve medical attention after breaking up the fight." (*Id.*) Thereafter, Plaintiff was transferred to ICF on August 31, 2021. (*Id.*) Plaintiff's complaint then describes a series of discrete events that occurred during his incarceration at ICF, all of which only involve the ICF Defendants. (*Id.*, PageID.5–11.)

    The above-discussed allegations are the only allegations involving Defendant Erickson. Defendant Moyle is also named in the allegations involving Defendant Erickson, and Defendant MBP is implicated in Plaintiff's allegations because the events involving Defendants Erickson and Moyle occurred at MBP. Although Plaintiff appears to believe that all of the subsequent events at ICF occurred because of the information that Defendant Erickson and Moyle included in his SCC report, all of the events described in Plaintiff's complaint do not arise from the same transaction or occurrence because the events occurred over the span of approximately five months at two

---

[1] The analysis of joinder must start somewhere. By accepting the first factual allegations as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

different correctional facilities and they involved different Defendants and supervisors. (*See id.*, PageID.4–11); *see also Proctor*, 661 F. Supp. 2d at 778.

Despite Plaintiff's attempt to join the MBP Defendants and the ICF Defendants in his complaint, Defendants Erickson's and Moyle's act "of purposefully screw[ing] up [Plaintiff's] SCC report," (ECF No. 1, PageID.4), which occurred at MBP, is a separate occurrence that is not transactionally related to the events that occurred later during Plaintiff's incarceration at a different correctional facility—ICF. Plaintiff seeks to connect all of the events that followed the writing of the SCC report to the Defendants who wrote the report simply because the writing of the SCC report—which occurred first—necessarily preceded the subsequent events. However, Plaintiff's allegations that some of the ICF Defendants referenced Plaintiff's SCC report and the information therein about Plaintiff's prior assault on a MBP staff member while acting against Plaintiff at ICF are insufficient to connect the ICF Defendants' actions to the singular act by Defendants Erickson and Moyle of writing Plaintiff's SCC report prior to his transfer to ICF.

Accordingly, the Court concludes that Defendants Erickson, Moyle, and MBP are properly joined because Plaintiff's claims against Defendant Erickson and Defendant Moyle arose out of the same transaction and occurrence, and because their actions occurred during Plaintiff's incarceration at MBP. However, Plaintiff has improperly joined all of the ICF Defendants.

### B.      Remedy

Because the Court has concluded that Plaintiff has improperly joined multiple Defendants to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. Civ. P. R. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By

now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff's misjoined claims involve conduct that occurred after August 31, 2021, which is well within the three-year period of limitations. Whether or not Plaintiff receives the benefit of tolling during the administrative exhaustion period, *see Brown*, 209 F.3d at 596, and during the pendency of this action, *Kalasho*, 66 F. App'x at 611, Plaintiff has sufficient time in the limitations period to file new complaints against the misjoined Defendants, and he will not suffer gratuitous harm if these Defendants are dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Plaintiff's claims against Defendants ICF, Simon, Bledsoe, Davis, Scott, Floyd, Tucker, Shouse, Morgan, Hinds, Way, Migrant, Sperry, Yuara, Thacker, Elliot, and Barber from this suit because they are misjoined and not at risk of being time-barred. The Court will dismiss without prejudice Plaintiff's complaint against the above-listed Defendants under Rule 21 of the Federal Rules of Civil Procedure. If Plaintiff wishes to procced with his claims against the dismissed Defendants, he shall do so by filing new civil actions on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*.[2]

---

[2] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its

**IV.      Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of

prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right

secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

---

discretion and without further warning, dismiss any future complaint, or part thereof, filed by
Plaintiff that contains claims that are misjoined.

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Defendant MBP

MBP is not a separate entity capable of being sued. As this Court noted in *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934 (W.D. Mich. Oct. 28, 2013), "individual prisons named as Defendants . . . (ICF, IBC, LRF and RGC) are buildings used by the MDOC to house prisoners. They are not the proper public entity for suit." *Id.* at *7; *see also Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) ("The McCracken County Jail is not a legal entity susceptible to suit . . .[; i]t is a department of the county . . . ."); *Caruthers v. Corr. Medical Serv., Inc.*, No. 1:10-cv-274, 2010 WL 1744881, at *1 (W.D. Mich. Apr. 27, 2010) ("The Duane Waters Hospital is not an entity capable of being sued. Rather, it is a building owned by the Michigan Department of Corrections."); *Poole v. Michigan Reformatory*, No. 09-CV-13093, 2009 WL 2960412, at *1 (E.D. Mich. Sept. 11. 2009) ("Plaintiff names the Michigan Reformatory, the Earnest C. Brooks Correctional Facility, and the Macomb Correctional Facility as defendants in this action. Those entities, however, are institutions operated by the MDOC and are not . . . legal entities subject to suit . . . .").

Moreover, § 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But neither the State of Michigan nor the MDOC is a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person."). And, obviously, because MBP is not an entity separate from the MDOC, it is not a "person" under § 1983 either.

*See, e.g.*, *Tinney v. Detroit Reentry Center*, No. 2:19-CV-10894-TGB, 2020 WL 4334964, at *2 (E.D. Mich. July 28, 2020) (stating "[a] state prison facility is not a person . . . capable of being sued under § 1983"); *Ward v. Healthcare Clinic*, No. 16-10646, 2016 WL 3569562, at *1 (E.D. Mich. July 1, 2016) (same); *Poole*, 2009 WL 2960412, at *1 (same).

Finally, even if Plaintiff had identified the MDOC or the State of Michigan as the Defendant, rather than MBP, and even if those entities were "persons" under § 1983, Plaintiff's claim would be properly dismissed because the MDOC and the State of Michigan are immune from suit under the Eleventh Amendment. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

For these reasons, Plaintiff's claims against MBP are properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and 42 U.S.C. § 1997e(c).

### B.     First Amendment Retaliation

Plaintiff's allegations regarding Defendants Erickson and Moyle implicate the protections of the First Amendment against retaliation. (*See* Compl., ECF No. 1, PageID.4.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this action, Plaintiff alleges that before he was transferred to ICF, "[he] was in a[] conflict with R.U.M. Erickson and P.C. Moyle/Oliver over grievances [he] filed" while at MBP. (Compl., ECF No. 1, PageID.4.) The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Nothing in the complaint suggests that in any of the grievances that he filed at MBP he was complaining about any actions by Defendants Erickson and Moyle. Regardless, because the filing of non-frivolous grievances constitutes protected activity, the Court assumes, without deciding, that Plaintiff has stated the first element of a First Amendment retaliation claim.

With regard to the second element, the adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Here, Plaintiff alleges that Defendants Erickson and Moyle "prepared [his] SCC report an[d]

weekly/monthly report that gives the reason for [administrative segregation] and m[a]liciously put in [Plaintiff's] report that [he] was involved in a[] fight in which weapons [were] used" and "[a]dded . . . 'a[] C/O received puncture wounds and had to rec[ei]ve medical attention after breaking up the fight.'" (Compl., ECF No. 1, PageID.4.) Plaintiff states that he "was not the inmate that stabbed the C/O nor[] did he ever rec[ei]ve a[] misconduct for this[;] the inmate who[] did was found guilty." (*Id.*) Of course, the words Plaintiff attributes to Erickson and Moyle do not claim that Plaintiff stabbed the C/O. Indeed, based on Plaintiff's allegations, everything Erickson and Moyle put into the SCC report was true.

Plaintiff does not allege that the addition of the information in his SCC report about him stabbing a correctional officer changed his security level, resulted in his placement in a more restrictive housing environment at MBP or ICF,[3] or was likely to result in a foreseeable adverse action to him in particular. *Cf. Hill*, 630 F.3d at 474–75 (discussing that "a prison transfer or the threat of a transfer can be an adverse action if that transfer would result in foreseeable, negative consequences to the particular prisoner" (citations omitted)). Plaintiff therefore has not shown that a person of ordinary firmness would likely be deterred from engaging in protected conduct if such information was added to his SCC report.

Finally, setting aside the above-discussed pleading deficiency, assuming that Plaintiff had alleged sufficient facts to satisfy the second element, Plaintiff must allege facts that support an inference that the adverse action was motivated by the protected conduct to state the third element of a First Amendment retaliation claim. Plaintiff's allegations regarding this third element fall short. Retaliation is easy to allege but it can seldom be shown by direct evidence. *See Harbin-Bey*

---

[3] Plaintiff states that he "was transferred because [he] was placed on a[] religious dietary tray." (Compl., ECF No. 1, PageID.4.) Plaintiff does not allege that any Defendants were involved in the decision to transfer him to ICF. (*See id.*)

*v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Here, Plaintiff has not provided sufficient facts from which the Court could reasonably infer that Defendants changed the information in his SCC report because Plaintiff had filed grievances. (*See* Compl., ECF No. 1, PageID.4.) In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Plaintiff's allegations do not support an inference that the temporal proximity is "significant enough" here. *Muhammad*, 379 F.3d at 417–18 (citation omitted). Specifically, although Plaintiff indicates that, at some point before he was transferred on August 31, 2021, "[he] was in a[] conflict with R.U.M. Erickson and P.C. Moyle/Oliver over grievances [he] filed" while at MBP, and that, at some other unspecified time before his transfer, he "was told

directly by Moyle and Erickson that they would purposefully screw up his SCC report so that [he] would have a[] hard time at ICF," nothing in the complaint suggests that the two incidents occurred within any proximity of each other such as to suggest that Defendants acted with a retaliatory motive. (Compl., ECF No. 1, PageID.4.) Indeed, other than stating in a conclusory manner that both incidents occurred at unspecified times before his transfer to ICF, Plaintiff provides no facts about the timing of the two incidents, and he alleges no facts suggesting a connection between the two incidents. Because Plaintiff alleges no facts regarding the timing of the two incidents or suggesting a connection between the two incidents, his allegations do not support an inference that the addition of the information on his SCC report was motivated by retaliation. Accordingly, for these reasons, Plaintiff has failed to adequately allege a causal connection between the protected conduct and the adverse action. Plaintiff therefore has failed to state a First Amendment retaliation claim against Defendants Erickson and Moyle.

## Conclusion

Plaintiff's motion for the appointment of counsel (ECF No. 7) and motion for a preliminary injunction (ECF No. 8) will be denied. Having conducted the review required by Rule 21 of the Federal Rules of Civil Procedure, the Court determines that Defendants ICF, Simon, Bledsoe, Davis, Scott, Floyd, Tucker, Shouse, Morgan, Hinds, Way, Migrant, Sperry, Yuara, Thacker, Elliot, and Barber are misjoined in this action. The Court will dismiss Plaintiff's complaint against them without prejudice. Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint against Defendants MBP, Erickson, and Moyle will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir.

1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment and order consistent with this opinion will be entered.


Dated:   April 19, 2022                      /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             UNITED STATES DISTRICT JUDGE